DAVID IBACH, SR., Individually and as Parent of DAVID IBACH, JR., an Infant, Plaintiff, *v.* GRANT DONALDSON SERVICE, INC., et al., Defendants (Action No. 1).

DAVID IBACH, SR., Individually and as Father and Natural Guardian of DANIEL IBACH, an Infant, Plaintiff, *v.* GRANT DONALDSON SERVICE, INC., et al., Defendants (Action No. 2).

ARTHUR SZYMINSKI, Individually and as Father and Natural Guardian of THOMAS SZYMINSKI, an Infant, Plaintiff, *v.* GRANT DONALDSON SERVICE, INC., et al., Defendants (Action No. 3).

HAL CASEY MOTORS, INC., Third-Party Plaintiff-Respondent, *v.* RENAULT, INC., Third-Party Defendant-Appellant (in each of these three actions).

Fourth Department, December 9, 1971.

*Smith, Murphy & Schoepperle (Frank G. Godson* of counsel), for third-party defendant-appellant.

*Palmer, Heffernan, Wickser & Beyer (John J. Heffernan* of counsel), for third-party plaintiff-respondent.

WITMER, J. Renault, Inc., third-party defendant in each of three third-party actions, appeals from a Special Term order entered in each action denying its motion to dismiss the second and third causes of action in the third-party complaint.

It appears that on August 19, 1966 the infant plaintiff in Action No. 1 was driving a 1961 Renault automobile, with the infant plaintiffs in Actions Nos. 2 and 3 as passengers, when the vehicle left the road and overturned, injuring all of them. They and their fathers in 1969 brought three separate actions against Hal Casey Motors, Inc. (Casey) *et al.,* alleging that on

July 23, 1966 Casey sold the vehicle to David Ibach, Jr. (plaintiff in Action No. 1); that it was a secondhand 1961 Renault automobile which Casey and its agents had inspected as required by the Vehicle and Traffic Law and to which Casey had affixed a certificate of inspection; that the inspection was negligently made and the car was in a defective condition, causing plaintiffs' injuries. Casey then brought a third-party action against Renault, Inc. in each of said three actions, alleging that Renault had originally sold the vehicle when new and placed it upon the market; and then setting forth three causes of action further alleging, (1) that if the vehicle was defective when plaintiffs were injured, it was owing to the primary active negligence of Renault, (2) that if plaintiffs recover from Casey because of the alleged defective condition, said condition existed from the date Renault sold and placed the vehicle upon the market and that Renault "will be strictly liable in tort" to reimburse Casey and, (3) that plaintiffs have alleged that when Casey sold the vehicle to plaintiff David Ibach, Jr., Casey impliedly warranted to plaintiff that it was fit for use on the highway; that plaintiff relied thereon; and that the vehicle was not fit for such use; and Casey alleges that if it is found liable to plaintiffs in warranty under the original complaints, Renault will be liable over to Casey for such amount, because Renault in placing the vehicle upon the market (see *Goldberg* v. *Kollsman Instrument Co.*, 12 N Y 2d 432, 437) impliedly warranted to any "contemplated user" that the vehicle was fit for use on the highway.

Renault then moved under CPLR 3211 to dismiss the second and third causes of action in the third-party complaints on the ground that they are barred by the Statute of Limitations. It supported the motions by an affidavit that its records prior to 1963 have been destroyed, but that in practice its 1961 automobiles were sold within 6 months of their receipt by it in 1961, so that more than 6 years have elapsed since it originally sold this vehicle. Special Term denied the motions upon the ground that, if Casey is held liable to plaintiffs, it will be entitled to be indemnified by Renault, and that such actions do not accrue until Casey's liability is determined, and thus that the Statute of Limitations could not have run against these causes of action. The court added that to avoid multiplicity of actions the third-party actions are permitted to be maintained concurrently with plaintiffs' actions, although Casey's liability, if any, has not yet been determined.

It is from the orders entered on such decision that Renault appeals. It did not move at Special Term against the first cause

of action in the third-party complaints, namely, the one founded in negligence; and it acknowledges that the court's reason for denying its motions against the second and third causes of action would be valid to sustain the first cause of action (see *Matter of Valstrey Serv. Corp.* v. *Board of Elections,* 2 N Y 2d 413; *Gutmann & Co.* v. *Dan River Mills,* 30 A D 2d 646; *Musco* v. *Conte,* 22 A D 2d 121; cf. *Grant Co.* v. *Uneeda Doll Co.,* 19 A D 2d 361, 364 [dissenting opn.]), but it contends that the principle of indemnity does not extend to the second and third causes of action.

For reasons later stated herein, we cannot approve the ground of Special Term's decision, but we agree with the result. In its moving papers Renault does not show when the original sale of the automobile was made by it, and hence it does not clearly appear that more than 6 years elapsed between that sale and the dates in 1969 when the third-party actions were begun. Where a trial may disclose facts which sustain the complaint, the drastic remedy of summary judgment of dismissal should not be granted upon motion (*Johnson* v. *Johnson,* 33 A D 2d 640). Against a motion by defendant which is treated as one for summary judgment the plaintiff should come forward with an affidavit of some facts demonstrating that there is merit to his case (*Shapiro* v. *Health Ins. Plan,* 7 N Y 2d 56); and this Casey has not done. Since, however, the information as to the date when Renault originally sold the automobile when new is not within Casey's knowledge, and is more likely available in some manner to Renault, this motion should not be granted (*Marine Midland Trust Co. of Northern N. Y.* v. *Macaluso,* 30 A D 2d 932). Denial of the motion will not work a hardship upon Renault, because it must defend the negligence actions in any event; and hence the orders appealed from should be affirmed.

Although the above conclusion is sufficient to dispose of these appeals, the paramount and most interesting point presented herein is whether the second and third causes of action in the third-party complaints will be barred if it develops upon the trial that Renault sold the automobile more than six years prior to the commencement in 1969 of these third-party actions against it. Because this question appears to be imminent in this case we express our views on it for the benefit of the Trial Justice.

A most important case to be considered in discussing this subject is *Mendel* v. *Pittsburgh Plate Glass Co.* (25 N Y 2d 340). It is not a third-party action, but its holding, dicta, and rationale virtually foreclose any New York lower court from establishing a different basis for liability than there declared. That

decision was not unexpected, for similar rulings preceded it (*Schwartz* v. *Heyden Newport Chem. Corp.*, 12 N Y 2d 212, 215; *Munn* v. *Security Controls,* 23 A D 2d 813). In *Mendel* the Pittsburgh Plate Glass Company (manufacturer) had manufactured, sold and installed in 1958 plate glass doors in the Central Trust Company building in Rochester, New York. In 1965 plaintiff was injured while walking through those doors, allegedly because of a defect therein. She sued the bank and the manufacturer in negligence, strict tort liability and breach of warranty. The manufacturer moved to dismiss plaintiff's breach of warranty action and strict liability action against it on the ground that they were outlawed by the then six-year Statute of Limitations. The motion was granted at Special Term, and the order entered thereon was affirmed by this court and affirmed by a 4 to 3 vote in the Court of Appeals. The opinion of the Court of Appeals has been criticized in a series of law review articles published in 45 St. John's Law Review, pages 62 to 104 (Oct., 1970). The critics, however, recognize that important policy considerations were involved in the court's decision and that the decision has a reasonable basis. Most of them, however, prefer the minority opinion in the case.

In writing for the court, Judge SCILEPPI placed together the strict tort liability action and the breach of implied warranty action (actions similar to those in the motion before us), saying at page 345, that " strict liability in tort and implied warranty in the absence of privity are merely different ways of describing the very same cause of action "; and concluded that the warranty Statute of Limitations (then six years, now four years) applied to both of them and that they were barred by the Statute of Limitations. In fact, under the decision, the cause of action was barred long before it arose, and this is an important reason for much of the criticism of it and the principle there enunciated. He justified the decision by writing (p. 346) : " We are willing to sacrifice the small percentage of meritorious claims that might arise after the statutory period has run in order to prevent the many unfounded suits that would be brought and sustained against manufacturers ad infinitum. Surely an injury resulting from a defective product many years after it has been manufactured, presumptively at least, is due to operation and maintenance. It is our opinion that to guard against the unfounded actions that would be brought many years after a product is manufactured, we must make that presumption conclusive by holding the contract Statute of Limitations applicable to the instant action and limit appellants to their action in negligence."

As noted above, this was not a third-party action, such as might be involved had the bank sued the manufacturer by third-party complaint, to hold the manufacturer liable for any recovery which plaintiff might obtain against the bank. That would be like the case at bar. Respondents-third-party plaintiffs contend that for this reason *Mendel* does not control here. They also contend that the evidence at the trial may establish that Renault's warranty was prospective and that the cause of action thereon did not accrue until a breach, that is, until plaintiffs were injured; and that the cause of action is grounded in indemnity by reason of strict tort liability.

As shown by the minority opinion in *Mendel,* a good argument can be made for giving a dealer a cause of action over, in implied warranty against the manufacturer, which would arise when the dealer is charged with responsibility for the defective product, and that hence the Statute of Limitations should not begin to run against the cause of action until such time. This, in effect, would constitute the manufacturer an indemnitor for any damage sustained by the dealer by reason of defects in the product attributable to the manufacturer. The New York courts, however, have long denied recovery for breach of warranty against a manufacturer on the theory of indemnity in this situation (*C. K. S., Inc.* v. *Borgenicht Sportswear,* 22 A D 2d 650; *Dolgoff* v. *Schnitzer,* 209 App. Div. 511; *Liberty Mut. Ins. Co.* v. *Sheila-Lynn, Inc.,* 185 Misc. 689, affd. 270 App. Div. 835; *City & County Sav. Bank* v. *Kramer & Sons,* 43 Misc 2d 731; Note: An Appraisal of Judicial Reluctance to Imply an Indemnity Contract in Time-Barred Breach of Warranty Suits, 39 St. John's Law Rev. 361 [1965]).

Concerning the argument that the implied promise was prospective, the court held in *Citizens Utilities* v. *American Locomotive Co.* (11 N Y 2d 409, 416) that it is the "settled New York rule * * * that where the warranty is as to kind, characteristics, suitability, etc., of the sold article the limitation runs from the date of sale and present inability to ascertain quality or condition is irrelevant. Such is the New York law as to the accrual of a cause of action of implied warranty".

It remains to consider whether we may conclude that *Mendel* does not require us to deny recovery to plaintiffs in strict liability or implied warranty because *Mendel* was not a third-party action. We note that the institution of a third-party action will not operate to extend the time for commencing an action against the manufacturer (see *McCabe* v. *Queensboro Farm Prods.,* 15 A D 2d 553, affd. 11 N Y 2d 963). It is clear

that the court's rationale in *Mendel,* as above quoted, was that there is no distinction between strict liability in tort and implied warranty (p. 345), and that because of the policy involved the court declares that the cause of action is controlled by the contract Statute of Limitations which began to run on the date of the sale by the manufacturer (p. 346). For us to hold that although a user is so limited as against the manufacturer, where a user can recover in contract from the retailer the latter can then sue the manufacturer for breach of implied warranty after the expiration of the Statute of Limitations from the date of the sale, would fly in the face of the declared policy of the majority in *Mendel.* Moreover, the court has previously expressed this same viewpoint. In *Citizens Utilities* v. *American Locomotive Co.* (11 N Y 2d 409, 417, *supra*) Chief Judge DESMOND wrote: " There is, of course, an element of unfairness in requiring a purchaser to sue within six years after purchase to enforce an agreement that the article which is the subject of the sale will last for 30 years. But this is the same kind of ' unfairness ' that may result from almost any Statute of Limitations. Indeed it results from the fundamental New York theory of limitations as expressed in article 2 of the Civil Practice Act which makes all limitations except a particular specified one run from breach and not from discovery."

The writings by the *Mendel* court and by those who have commented on the decision point up the opposing considerations in cases of this sort. They also show that the decision has a reasonable basis in law, and that the *Mendel* court made a policy decision. We hold that the principle underlying that decision applies with equal force in respect of third-party actions against manufacturers, and that with respect to the Statute of Limitations, the *Mendel* holding controls the case at bar. Thus, Casey's second and third causes of action against Renault are subject to the six-year Statute of Limitations from the date of the original sale of the 1961 automobile, unless the evidence shows that that sale was made on or after September 27, 1964, in which event the four-year Statute of Limitations would apply (Uniform Commercial Code, § 2–725, subd. [4]).

The orders should be affirmed.

DEL VECCHIO, J. P., MARSH, MOULE and HENRY, JJ., concur.

Orders unanimously affirmed.